### N. J. PIERCE ET AL. V. BARTLEY WALLACE ET AL.

1. WILL—CONSTRUCTION.—In a will, the words " I wish my estate to be kept out of the Probate Court," substantially complies with article 110 of the Probate Act of 1848, (Paschal's Dig., 1371,) in providing that "no other action shall be had in the Probate Court * * * than the probating and registration" of the will.

2. BOND.—An executor, acting under such a will under said act, executed a bond, conditioned as in ordinary cases of administration. In an action by heirs and distributees upon such bond : *Held*—

    1. The bond was executed without authority of law, and was purely voluntary.

    2. As a common-law bond, suit could not be maintained on it in the name of the distributees.

3. LIABILITY OF EXECUTOR.—Such suit may have been prosecuted against the principal, dismissing as to the sureties on the bond.

ERROR from Rusk. Tried below before the Hon. M. D. Ector.

Woodford Wallace made a will 17th of March, 1858, in which, after providing for the payment of his debts and the support of his sister, he devised the remainder to his four children; the property to be kept together until they became of age. Two persons were named as executors. The will contained also the clause—"I wish my estate to be kept out of the Probate Court." By a codicil, the executors were empowered to "buy and sell land."

The will was admitted to probate, and an inventory was returned.

One of the executors died, and the survivor, Bartley Wallace, with William Hays, R. F. Parker, and W. A. Parker, sureties, executed a bond in the usual form of an executor, which was approved by the chief justice December 15, 1871. The bond was conditioned, that the said Bartley Wallace should "well and truly perform all the duties required of him under said appointment," &c.

June 20, 1874, N. J. Pierce and her husband, and the other children of the testator, brought suit upon the bond, alleging the wrongful conversion of a large portion of the estate by the executor, and asking a recovery against him and the sureties on the bond.

The sureties interposed a demurrer to the petition. Several amendments were filed, but not materially changing the nature of the action. The defendants made special defenses, but not being acted upon by the court, they are not further noticed.

The court sustained the demurrer to the petition, and judgment final on demurrer was rendered for defendants.

The plaintiffs prosecute by writ of error in this court.

*N. G. Bagley,* for plaintiffs in error, cited Paschal's Dig., art. 1371; 3 Red. on Wills, 269; Warner *v.* Bailey, 7 Tex., 517; Zacharie *v.* Bryan, 2 Tex., 274; Cooke *v.* Crawford, 1 Tex., 11; Foster *v.* Wells, 4 Tex., 104; Weathered *v.* Mays, 4 Tex., 389; Hatch *v.* Garza, 22 Tex., 177; Echols *v.* Dodd, 20 Tex., 191; Wyche *v.* Clapp, 43 Tex., 549; City of Marshall *v.* Bailey, 27 Tex., 686; Evans *v.* Oakley, 2 Tex., 182; Remick *v.* Luter, 32 Tex., 799; Trammel *v.* Philleo, 33 Tex., 406; Francis *v.* Northcote, 6 Tex., 185; Fisk *v.* Norvel, 9 Tex., 13; Ponton *v.* Bellows, 22 Tex., 681.

*Drury Field,* also for plaintiffs in error.

*W. W. Morris,* for defendants in error, cited Francis *v.* Northcote, 6 Tex., 185; Hogue *v.* Sims, 9 Tex., 546; Shaw *v.*

Ellison, 24 Tex., 199; United States v. Tingey, 5 Pet., 129; City of Marshall v. Bailey, 27 Tex., 686.

*James H. Jones,* also for defendants in error.

MOORE, ASSOCIATE JUSTICE.—When the will of Woodford Wallace, plaintiffs' ancestor, was made, and when the bond upon which this suit is brought was executed, the one hundred and tenth section of the act of March 20, 1848, "to regulate proceedings in the County Court pertaining to estates of deceased persons," was still in force. (Paschal's Dig., p. 335.) The language of the will is not in literal conformity with this section of the statute, but evidently it is the same in substance and effect. No other inference can be drawn from the will, than that it was the intention of the testator that no other action should be had in the County Court in relation to the settlement of his estate, than the probate and registration of his will, and the return of an inventory of the estate. Under this will, the jurisdiction of the County Court over the estate was limited to the completion of these special matters, unless some of the heirs or persons entitled to the estate, (or some other person for them,) when required so to do by the court, on application of some one having a debt against it, should fail to execute to the chief justice of the county an obligation, with two or more good and sufficient sureties, in an amount equal to the full value of the estate as shown by the inventory, binding themselves to pay all debts of the estate.

The condition of the bond upon which this suit is brought, is that of an ordinary administrator's bond. Evidently, it was not given for the payment of the debts of the estate, in obedience to an order of the court made on an application of a creditor. Nor is it shown that an application of any creditor of the estate, if there were any, had been made for such an order; which was essential, for the County Court to reacquire jurisdiction over the estate. No doubt, if the heirs and those interested in the estate should fail to give the requisite

bond, when ordered to do so by the court, settlement of the estate would have to be completed in the court, just as if no such will had been made; and the provision in the will to the contrary would become entirely nugatory. (Shaw *v.* Ellison, 24 Tex., 199; Hogue *v.* Sims, 9 Tex., 546.)

But if we could presume that the County Court had jurisdiction of the estate when this bond was executed, before such an action as this could be maintained on the bond, the executor should have been called upon to account in the forum in which the settlement of the estate of the testator was being conducted.

It is suggested, that although the bond on which this suit is brought may not be a good statutory bond, yet, as it was voluntarily given by defendants, suit may be maintained upon it as a common-law bond. No question, it has been often held, when a public officer or party, acting as a trustee, is required by law to give bond for the faithful discharge of his duties, and he voluntarily executes a bond to this end; but with conditions not in strict conformity to the statute, such bond will be sustained and may be enforced as a common-law bond. (Goodrum *v.* Carroll, 2 Humph., 490; The Justices, &c., *v.* Ennis, 5 Ga., 569.) And it may be, if a party acting in a capacity in which he is not required to give bond should nevertheless voluntarily give a bond to the parties in whose behalf he is acting, or even to some one for their benefit, for the faithful discharge of such business, an action on the bond might be maintained by the obligee. But a sufficient consideration is, undoubtedly, just as essential to support such contracts as these, as any others. Certainly, a mere voluntary obligation to the chief justice of the County Court for the faithful performance of duties with which the chief justice has no official or other connection whatever, is lacking in this essential element of a valid contract. · But if this bond could be upheld, a common-law bond suit could not be maintained upon it in the name of the plaintiffs, between whom and defendants there is no privity of contract.

The plaintiffs may of course bring an action against the executor, if he has been guilty of a breach of the trust committed to him by the will. And had they seen fit to do so, they might have dismissed their petition as to the sureties on the bond, and proceed with their suit against the executor. But it was altogether optional with appellants to take this course, or let a final judgment go against them on the demurrer. Having made their election, they must abide by and accept its results.

There is no error in the judgment, and it is therefore affirmed.

AFFIRMED.