## BRANNON et al. v. MORGAN.

### No. 4720.

Court of Civil Appeals of Texas. Amarillo.

March 8, 1937.

Rehearing Denied June 21, 1937.

T. Wade Potter, of Littlefield, and D. M. Doyle and J. Rob Griffin, both of Fort Worth, for plaintiffs in error.

Meade F. Griffin and Lucian Morehead, both of Plainview, for defendant in error.

HALL, Chief Justice.

On January 9, 1931, Mrs. Bell Morgan, the wife of C. C. Morgan, executed her olographic will. She died March 12, 1932. Surviving her are her husband and two married daughters; viz., Mrs. Blanche Brannon and Mrs. Nell Cooper. Her will was probated on the 29th day of December, 1934, in Lamb county, which was the place of her residence, and Blanche Morgan Brannon, appellant herein, was duly appointed as executrix and took possession of the estate of decedent, which consisted of real and personal property situated in the counties of Lamb and Palo Pinto, of the probable value of $15,000.

The estate is still in process of administration, and this suit was instituted by C. C. Morgan against Blanche Morgan and her husband and against Nell Morgan Cooper and her husband for the purpose of having the will construed. His contention is that the will operated to vest in him a fee-simple title to all of his wife's estate, with power and authority to have and enjoy the same now and in the future; that under its provisions he is entitled to the exclusive control, management, and right to dispose of said estate in fee simple. In the alternative, he insists that he has title to the property with the sole and exclusive right of control, management, and disposition of the same to the exclusion of any and all other parties whomsoever; that he is now and has been for some time entitled to the possession, use, and enjoyment of the estate with the right to dispose of the same as in his discretion may appear to him just and proper. The Coopers did not answer.

Mrs. Brannon, joined by her husband, pro forma, filed a plea in abatement which was overruled by the trial court. They sought to abate the suit because of the pendency of another action in which judgment had been rendered in the district court of Palo Pinto county, and from which an appeal had been prosecuted.

The Brannons further answered, admitting that C. C. Morgan was the surviving husband of Bell Morgan, that he was the father of plaintiff in error, Mrs. Blanche Brannon, and her sister, Mrs. Nell Cooper. They also admitted probation of the will, the appointment of Mrs. Brannon as executrix, her qualification, and that she had taken possession of the property. She denied that she was converting any part of the rents and revenues derived from the estate and alleged that she was taking care of the property and was at all times ready, willing, and anxious to account for all the property and revenues which had been derived therefrom and which were in her hands as executrix.

Mrs. Brannon insisted that by a proper construction of the will, C. C. Morgan

took a life estate subject to a trust in her favor as qualified executrix, with the authority to manage and control the estate; that plaintiff in error and her sister, Mrs. Cooper, codefendant in the trial court, were entitled as remaindermen in and to the property of said estate, the same to become vested after the death of defendant in error, C. C. Morgan.

The district judge construed the will as evidencing the intention of testatrix to pass said property to her husband in fee simple and construed the clause in the will which expresses the desire of testatrix that at the time of her husband's death the property should be divided equally between her daughters, Mrs. Cooper and Mrs. Brannon, was merely precatory and that it in no way cut down the fee-simple title of the said C. C. Morgan or in any manner limited said title. The will is as follows:

"Amherst Texas Jan. 9, 1931, I Bell Morgan This is my first and Last will I Bell Morgan am willing Cliff Morgan my husband all of my Earthley Poessiones. as I owe it to him

"I Bell Morgan request that Blanche Morgan Brannon and Nell Morgan Cooper to be administrator over all the estate with out Bond I Bell Morgan request at the death of Cliff Morgan My Husband for Blanche Morgan Brannon and Nell Morgan Cooper to divide the Estate Equley Between them selves ·

"I Bell Morgan request that 'Homer T. Brannon and Ernest J. Cooper I Bell Morgan two Sunninlaws Have nothing to do with The dividing of the Estate for it doesant consern them in any way.

"I Bell Morgan don't want know hard feelings and Lawsuits over the Eastate after I Bell Morgan and Cliff Morgan my Husband haf Deceased.

"Bell Morgan."·

The envelope inclosing the will contains this endorsement:

"Cliff Morgan   To be opened at the Death of Bell Morgan."

By the first five propositions, Mrs. Brannon attacks the action of the court in permitting Morgan and his daughter, Mrs. Cooper, to testify with regard to conversations between them and testatrix, prior to her death, and declarations and statements made by testatrix with reference to the property. The objections are that the testimony admitted tended to contradict and vary the terms of the will; to impeach the title of testatrix to the lands

devised with reference to the intentions of testatrix in disposing of her property in the future because such declarations tended to add to and vary the terms of the will; and the further fact testified to by Mrs. Cooper that she, joined by her husband, had conveyed to C. C. Morgan, since the death of her mother, the property involved in the suit.

■ The testimony of C. C. Morgan which was objected to was clearly inadmissible. It merely tended to show how· he acquired the property which he had conveyed to his wife and the amount and value thereof. It was incompetent and immaterial for the reason that both parties conceded that the effect of the conveyance which Morgan had made to his wife was to invest her with the fee-simple title and make it her separate estate.

■ Since the trial was before the court without a jury, it must be presumed upon appeal that the court trying the case was not influenced by incompetent evidence; this, of course, in the absence of a contrary showing. Appellant does not show that the admission of such testimony was injurious. Extrinsic evidence is admissible to aid in interpreting a will largely to the same extent as it is in interpreting other written instruments. Since the case of Hunt v. White, 24 Tex. 643, the courts have been liberal in permitting proof of a variety of extrinsic facts and circumstances under which the will was executed as an aid to the discovery of the intentions of the testator.

■■ It is held that in the case of ambiguity, extrinsic evidence is admissible to assist the court in ascertaining the testamentary intent and in determining the meaning of words used. Proof of extrinsic facts is generally held to be admissible to aid in construction to the extent of removing doubts and uncertainties, when with that aid the intention is made clear. It is further admissible to show the situation of the testatrix in her relationship to persons and things around her in order that the will may be read in the light of surroundings existing at the time it was made. If possible, the testamentary intent must be found in the will considered from its four corners. Consideration should also be given to the context and to all parts of the instrument; the intention being collected from the whole instrument rather than from one or more certain clauses. Mrs. Cooper testified that soon after her

mother obtained title to the property, she had several conversations with her. Much of her testimony was inadmissible. The particular part of it to which plaintiffs in error objected is as follows:

"Q. What did she (Mrs. Morgan) say about what she was going to do with the property when she died? (The objections to this question were overruled and she answered). A. She wanted papa to have it back so that he could run it as long as he lived and for us kids to not fuss at him or mistreat him.

"Q. What did she say about whether or not he was a good or bad trader? A. A good trader and she knew it.

"Q. She wanted him to have it so he could trade and handle it? A. Yes, sir.

"Q. If she died first, she wanted him to have it, and if he died first, she would be protected? A. If he died first, she would have it, and if she died first, he would have it, and after his death and her death if there was anything left, it was for us kids."

The questions presented, we briefly state as follows: (1) Does the will give all the property to C. C. Morgan in fee simple? or (2) Does he take merely a life estate with the remainder over to his daughters? or (3) Does the will create a testamentary trust in favor of the husband with the daughters as trustees? or (4) Is the second clause of the will precatory and for that reason does not limit the fee-simple estate vested in Morgan by the first clause?

■ In our opinion, no testamentary trust was created because the will contains no imperative or compelling language to that effect and the beneficiary is not made certain. McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412; Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 31 Am.St.Rep. 29.

If the issue as to the appointment of a trustee is doubtful, the courts uniformly hold that no testamentary trust has been established. Speairs v. Ligon, 59 Tex. 233; Peet v. Commerce & Estry St. Ry. Co., 70 Tex. 522, 8 S.W. 203; Dulin v. Moore, 96 Tex. 135, 70 .S.W. 742.

■ There are some significant facts which would tend to show that Mrs. Morgan did not intend to vest the fee-simple title to all of the property in her husband. She gave him no express power to sell or dispose of any of the property. This is significant when considered with the further clause which in effect appoints her daughters executrices. Mrs. Brannon alone qualified as executrix and as such she has the power, under proper orders of the probate court, to dispose of and sell the property coming into her hands. If the testatrix intended that her husband should have the fee-simple title, then why did she not give him power of disposition and make him the executor of her will? She speaks of the property as her "earthly possessions," "all the estate," "divide the estate," and has nothing in the will, aside from the power incident to the first clause, to indicate that she intended that there should be a sale of any part of it, since she speaks of it in every instance as an entirety.

■ While she states in the first clause which, considered alone, vests a fee-simple title in her husband that she "owes it to him," we have found nothing in the record which would indicate that she considered the obligation to be any more than a moral one. Because in the second and subsequent clauses she uses the word "request," it is contended that the will in that particular is precatory. We think the second clause where she requests that her daughters be appointed "administrator" of all the estate without bonds, is a clear and definite appointment of her daughters as executrices.

It will be observed that when she uses the word "request" the third time in declaring her will with reference to the action and authority of her sons-in-law, she is very positive that she does not want them to have anything to do with dividing the estate, because it does not concern them in any way. There is nothing precatory about this statement.

The only part of the will following the first clause which can reasonably be considered as precatory is where she requests that at the death of her husband her daughters should divide the estate equally between them; and C. C. Morgan insists that this is an ambiguity which requires the introduction of testimony to aid in the construction of the will and has the effect of creating a remainder in favor of the daughters contingent upon the death of the father who takes only a life estate.

Although the will provided that the executrices should not be required to give bond, this does not result in Mrs. Brannon being an independent executrix. Smithwick v. Kelly, 79 Tex. 564, 15 S.W. 486; McMahan v. McMahan (Tex.Civ.

845

App.) 175 S.W. 157.; Gray v. Russell, 41 Tex.Civ.App. 526, 91 S.W. 235.

The testatrix did not say that the remainder of the estate, or the balance of the estate on hand at the death of her husband should be equally divided between her daughters, and we are constrained, in the light of R.S. art. 1291, to hold that the precatory clause is not sufficient to limit the fee simple estate vested by the first clause in C. C. Morgan, R.S. art. 1291, provides:. "Every estate in lands which shall thereafter be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

Judge Gallagher in Darragh v. Barmore (Tex.Com.App.) 242 S.W. 714, 716, said:

"It is undisputed that paragraph 1 is in terms an absolute devise of the property therein described to plaintiffs in error, and that, unless restrained by said subsequent paragraphs, it passes the fee in such property as fully as if it read 'to plaintiffs in error, their heirs and assigns forever,' in express terms. * * *

"Such being the case, before such succeeding paragraphs can be held to limit or reduce the estate so granted, the intention of the testatrix that they should have such effect must clearly appear.

"May v. Town-Site Company, 83 Tex. 502, 508, 509, 18 S.W. 959." Speairs v. Ligon, 59 Tex. 233; Gilliam v. Mahon (Tex.Com.App.) 231 S.W. 712; Rae v. Baker (Tex.Civ.App.) 38 S.W.(2d) 366.

We believe the court has correctly construed the will, and the judgment is affirmed.